UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JECENTA EMETAZI** | **CASE NO. 3:26-CV-03742 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN RICHWOOD CORRECTIONAL CENTER ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# MEMORANDUM ORDER

Before the Court is a Motion for Preliminary Injunction [Doc. No. 2] filed by Petitioner Jecenta Emetazi ("Petitioner"). Respondents, Warden of Richwood Correctional Center, Field Officer Director New Orleans ICE, David J. Venturella, Markwayne Mullin, and Todd Blanche, in their official capacities (collectively, "Respondents"), filed a response [Doc. No. 11]. Petitioner filed a reply [Doc. No. 13].

After careful consideration of the parties' filings and applicable law, the Motion for Preliminary Injunction [Doc. No. 2] is **DENIED**.

## I. Background

Petitioner is a native and citizen of Cameroon.[1] On an unknown date and at an unknown location, Petitioner entered the United States without being inspected, admitted, or paroled by an immigration official.[2] On September 26, 2024, United States Border Patrol arrested and served Petitioner with a Notice to Appear charging her as inadmissible under INA § 212(a)(7)(A)(i)(I).[3] On November 4, 2024, Petitioner

[1] [Doc. No. 2-2, p. 1].
[2] [Doc. No. 11-4, p. 2].
[3] [Id.].

claimed fear of returning to Cameroon.[4] Petitioner applied for protection stating simply that she "was afraid to return."[5]

Petitioner was held in immigration detention for approximately seven months.[6] On April 8, 2025, Immigration Judge William Mabry III found Respondent removable, and her removal order became administratively final on the same day as both parties waived their appeal.[7] *See* 8 C.F.R. §§ 1003.39, 1241.1(b). Judge Mabry ordered her removed to Cameroon and, on the same date, granted her a withholding of removal to Cameroon under both INA § 241(b)(3) and the Convention Against Torture, but denied her claim for asylum.[8] Petitioner's detention continued for "approximately one to two [more] weeks" following the April 8, 2025, order.[9]

On or about April 23, 2025, United States Immigration and Customs Enforcement ("ICE") granted her release on an Order of Supervision ("OSUP").[10] Pursuant to its authority under 8 C.F.R. § 241.13(i), on September 18, 2026, ICE revoked Petitioner's OSUP and served her with a Notice of Revocation of Release.[11] The form stated the following as the reason for the revocation: "Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future."[12] The Notice form also stated, "[o]n 09/18/26, you will be afforded an informal interview at which you will be given an opportunity to respond to the

[4] [Doc. No. 11-4, p. 2].
[5] [Doc. No. 2-2, p. 2].
[6] [Doc. No. 10, p. 3].
[7] [Doc. No. 11-1, p. 1].
[8] [Doc. No. 11-1, p. 1, 3].
[9] [Doc. No. 10, p. 2]; [Doc. No. 11, p. 3].
[10] [Doc. No. 11-2, p. 1].
[11] [Doc. No. 11-3, p. 1].
[12] [Id.].

reasons for this revocation."[13] The record does not specify whether the informal interview occurred.[14] Petitioner was transferred to Richwood Correctional Center in Monroe, Louisiana where she is currently detained.[15]

On September 24, Petitioner filed a habeas petition and sought emergency injunctive relief.[16] Petitioner's counsel stated that Petitioner "may be removed to Rwanda on September 24, 2026."[17] Petitioner's counsel also asserted, "[t]o my knowledge [Petitioner] received no written notice of the reasons for revocation of her release and no informal interview."[18] This was further corroborated by Petitioner herself who swore under penalty of perjury that "[n]o one gave me any paper telling me why my release was being taken away" and "I was not given any documents at all on the day I was detained."[19] If these statements were true, it would constitute a violation of 8 C.F.R. § 241.4(l). Relying on these statements, this Court issued a temporary restraining order prohibiting Respondents from deporting Petitioner to preserve this Court's ability to adjudicate the habeas petition and due to the apparent regulatory violation.[20] As noted above, subsequent briefing has shown, in direct contradiction to the sworn statement of Petitioner, that notice of the reasons for revocation of Petitioner's OSUP were provided and an informal interview was, at the very least, planned.[21]

---

[13] [Id. at p. 2].
[14] [Doc. No 11, p. 2].
[15] [Doc. No. 1, p. 2].
[16] [Doc. Nos. 1, 2].
[17] [Doc. No. 2-1, p. 1].
[18] [Id. at p. 2].
[19] [Doc. No. 2-2, ¶¶ 16, 19].
[20] [Doc. No. 5].
[21] [Doc. No. 11-3, p. 3].

## II. Standard of Review

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). "It is well established" that these protections also apply to aliens. See *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).

Congress authorizes district courts to grant "writs of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). For the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Law & Analysis

Petitioner filed a Motion for a Preliminary Injunction prohibiting Respondents from removing Petitioner to Rwanda or any other country not designated in her removal.[22] Further, Petitioners ask the Court to require Respondents, should they decide to effectuate Petitioner's removal, to (1) serve written notice of the proposed country on her and "in a language she understands," (2) require Respondents to provide Petitioner with no fewer than ten days after notice to present a claim for withholding of removal or protection under the CAT with respect to the proposed

[22] [Doc. No. 2].

country, (3) order that the claim be adjudicated by an Immigration Judge, and (4) forbid removal until seven days after an adverse final decision.[23]

To prevail on a preliminary injunction, Petitioner must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable injury without preliminary relief, that the balance of equities favors relief, and that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Where the Government is the opposing party, the final two factors—the balance of equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The burden is on the Petitioner. Further, it is well-established that the preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

Petitioner's requested injunctive relief is to remedy two alleged violations. First, she argues that this Court should prohibit her deportation until the execution of particular procedures (listed above). These procedures would give her time to raise a withholding of removal claim to any third-country Respondents seek to deport her to. Petitioner readily admits that her order of execution is final and valid. In other words, Petitioner asks this Court would prohibit the execution of a valid removal order. However, Congress has explicitly removed this Court's ability to do just that in 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . [to] execute removal orders against any alien.").

---

[23] [Id. at p. 2].

The Fifth Circuit addressed this issue in a recent case. *Imran v. Harper*, No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026). In that case, the petitioner requested a stay of his removal to allow the court to address his detention-related claim. *Id.* at *1. The court found that the "district court lacked jurisdiction to grant such relief" because "[a] request for stay of removal is a challenge to a removal order." *Id.* Similarly, here, Petitioner's requested relief would flatly prohibit the government from executing an otherwise valid and final order of removal. This Court lacks jurisdiction to issue such an order.

Even if this Court erred with respect to its jurisdictional analysis, Petitioner has not carried her burden of establishing that she is entitled to a preliminary injunction. Petitioner has not shown likelihood of success on the merits of her request to bar Respondents from executing her removal order. Title U.S.C. § 1231(b)(2) allows for Respondents to remove Petitioner to any country willing to accept her. Petitioner's withholding of removal to Cameroon, is just that: a withholding of removal to *Cameroon*—not a withholding of removal in general. As the Supreme Court articulated, "[i]f an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021). More importantly, Petitioner identifies no statutory, regulatory, or precedential authority from the Supreme Court or the Fifth Circuit requiring the procedures specified in her request relief. After similarly finding that the moving party failed to meet its burden on the first prong of the preliminary injunction test, the Court said, "Because we

conclude that [the moving party] did not show a likelihood of success on the merits of its claims, we do not reach the remaining preliminary injunction factors." *TitleMax of Texas, Inc. v. City of Dallas*, 142 F.4th 322, 335 (5th Cir. 2025). Here, the dearth of legal authority supporting Petitioner's arguments on the first *Winter* factor similarly leads this Court to deny Petitioner's request for a preliminary injunction regarding her third-country removal claims.

This Court also denies relief with respect to Petitioner's request for a preliminary injunction on the purported revocation issue. There is evidence that Petitioner received notice of the reasons for revocation.[24] Though there was indication of a planned informal interview shortly after detainment, Respondents "do not ask the Court, on the present record, to find that the interview was completed."[25] 8 C.F.R. § 241.13(i)(2) permits ICE to revoke release and detain an alien if "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Petitioner's request for injunctive relief primarily fails because the remedies requested—prohibiting Respondents from deporting Petitioner and a host of other proposed extra-statutory and extra-regulatory procedures—do not match the underlying purported violation of Respondents' regulatory requirements. Injunctive relief—an extraordinary remedy—must be "narrowly tailored" to match the harm shown. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) ("[T]he scope of injunctive relief is dictated by the extent of the violation established, [t]he district court must narrowly tailor an injunction to remedy the specific action which gives

[24] [Doc. No. 11-3, p. 2].
[25] [Doc. No. 11, p. 8].

rise to the order.”). Indefinitely barring deportation is not a “narrowly tailored” remedy to Respondents’ potential failure to provide an informal interview at the time of Petitioner’s re-detention.

## IV. Conclusion

For the reasons set forth herein,

It is **ORDERED** that the Motion for Preliminary Injunction [Doc. No. 2] is **DENIED**.

MONROE, LOUISIANA, this 16th day of October, 2026.

Terry A. Doughty
United States District Judge