**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **JECENTA EMETAZI** | **CASE NO. 3:26-CV-03742 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN RICHWOOD CORRECTIONAL CENTER ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# MEMORANDUM ORDER

Before the Court is an Emergency Motion for Temporary Restraining Order, a Motion for Stay of Removal, and a Motion for Limited Reconsideration [Doc. No. 16] filed by Petitioner, Jecenta Emetazi ("Petitioner").

After careful consideration, the Motions are **DENIED**.

## I. Background

The pertinent aspects of Petitioner's background, being largely unchanged, are repeated for convenience, with a brief addendum including the developments subsequent to this Court's recent memorandum order.[1]

Petitioner is a native and citizen of Cameroon.[2] On an unknown date and at an unknown location, Petitioner entered the United States without being inspected, admitted, or paroled by an immigration official.[3] On September 26, 2024, United States Border Patrol arrested and served Petitioner with a Notice to Appear charging her as inadmissible under INA § 212(a)(7)(A)(i)(I).[4] On November 4, 2024, Petitioner

[1] [Doc. No. 14].
[2] [Doc. No. 2-2, p. 1].
[3] [Doc. No. 11-4, p. 2].
[4] [Id.].

claimed fear of returning to Cameroon.[5] Petitioner applied for protection stating simply that she "was afraid to return."[6]

Petitioner was held in immigration detention for approximately seven months.[7] On April 8, 2025, Immigration Judge William Mabry III found Petitioner removable, and her removal order became administratively final on the same day as both parties waived their appeal.[8] *See* 8 C.F.R. §§ 1003.39, 1241.1(b). Judge Mabry ordered her removed to Cameroon and, on the same date, granted her a withholding of removal to Cameroon under both INA § 241(b)(3) and the Convention Against Torture, but denied her claim for asylum.[9] Petitioner's detention continued for "approximately one to two [more] weeks" following the April 8, 2025, order.[10]

On or about April 23, 2025, United States Immigration and Customs Enforcement ("ICE") granted her release on an Order of Supervision ("OSUP").[11] Pursuant to its authority under 8 C.F.R. § 241.13(i), on September 18, 2026, ICE revoked Petitioner's OSUP and served her with a Notice of Revocation of Release.[12] The form stated the following as the reason for the revocation: "Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future."[13] The Notice form also stated, "[o]n 09/18/26, you will be afforded an informal interview at which you will be given an opportunity to respond to the

[5] [Doc. No. 11-4, p. 2].
[6] [Doc. No. 2-2, p. 2].
[7] [Doc. No. 10, p. 3].
[8] [Doc. No. 11-1, p. 1].
[9] [Id. at pp. 1, 3].
[10] [Doc. No. 10, p. 2]; [Doc. No. 11, p. 3].
[11] [Doc. No. 11-2, p. 1].
[12] [Doc. No. 11-3, p. 1].
[13] [Id.].

reasons for this revocation."[14] The record does not specify whether the informal interview occurred.[15] Petitioner was transferred to Richwood Correctional Center in Monroe, Louisiana where she is currently detained.[16]

On September 24, Petitioner filed a habeas petition and sought emergency injunctive relief.[17] Petitioner's counsel stated that Petitioner "may be removed to Rwanda on September 24, 2026."[18] Petitioner's counsel also asserted, "[t]o my knowledge [Petitioner] received no written notice of the reasons for revocation of her release and no informal interview."[19] This was further corroborated by Petitioner herself who swore under penalty of perjury that "[n]o one gave me any paper telling me why my release was being taken away" and "I was not given any documents at all on the day I was detained."[20] If these statements were true, they would establish a violation of 8 C.F.R. § 241.4(l). Relying on these statements, this Court issued a temporary restraining order ("TRO") prohibiting Respondents from deporting Petitioner to preserve this Court's ability to adjudicate the habeas petition and due to the apparent regulatory violation.[21] As noted above, subsequent briefing has shown, in direct contradiction to the sworn statement of Petitioner, that notice of the reasons for revocation of Petitioner's OSUP was provided and an informal interview was, at the very least, planned.[22]

---

14 [Id. at p. 2].
15 [Doc. No. 11, p. 2].
16 [Doc. No. 1, p. 2].
17 [Doc. Nos. 1, 2].
18 [Doc. No. 2-1, p. 1].
19 [Id. at p. 2].
20 [Doc. No. 2-2, ¶¶ 16, 19].
21 [Doc. No. 5].
22 [Doc. No. 11-3, p. 3].

## II. Law and Analysis

Of particular relevance to this issue, the Court has issued three orders.[23] The first,[24] issued within hours of receiving Petitioner's habeas petition,[25] granted Petitioner's request for a TRO.[26] Petitioner averred that she might be removed that day.[27] Petitioner also declared that no documents were given to her upon her detainment, nor was an informal interview given—an apparent violation of 8 C.F.R. § 241.4(l).[28] Thus, to preserve this Court's ability to adjudicate the habeas petition, the TRO was granted. Consistent with this Court's practice and with the TRO in place, it denied Petitioner's motion to show cause[29] which proposed an expedited briefing schedule for the habeas petition.[30]

Most recently, the Court denied Petitioner's motion for preliminary injunction.[31] The Court rejected Petitioner's attempt to end-run the jurisdiction-stripping effect of 8 U.S.C. § 1252(g). That statutory provision states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . [to] execute removal orders against any alien." 8 U.S.C. § 1252(g). Despite acknowledging the validity of her final removal order, Petitioner sought (and continues to seek) to prevent its execution until particular extra-statutory and extra-regulatory procedures are performed. As this Court explained,

---

[23] [Doc. No. 5]; [Doc. No. 7]; [Doc. No. 14].
[24] [Doc. No. 5].
[25] [Doc. No. 1].
[26] [Doc. No. 2].
[27] [Doc. No. 2-1, p. 1].
[28] [Doc. No. 2-2, p. 3].
[29] [Doc. No. 7].
[30] [Doc. No. 2-3, p. 3].
[31] [Doc. No. 14].

this is exactly the type of judicial interference that § 1252(g) forbids. The Fifth Circuit clarified that a "request for stay of removal is a challenge to a removal order" and within the ambit of § 1252(g)'s jurisdiction-stripping effect. *Imran v. Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026). This was once more affirmed by a recent panel. *Gakou v. Warden of Prairieland Detention Ctr.* No. 26-10925, 2026 WL 3044209, at *1-2 (5th Cir. Oct. 10, 2026). To the extent that Petitioner seeks a stay of her removal, this Court has no jurisdiction under the binding authority of the Fifth Circuit's interpretation of § 1252(g).

Further, this Court denied Petitioner's request for preliminary injunction on the purported revocation of her Order of Supervision.[32] As noted in the Court's memorandum order, injunctive relief is an extraordinary remedy that must be "narrowly tailored" to match the harm shown. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).[33] If anything, the appropriate remedy for Petitioner's revocation claim is release from custody, not an indefinite bar on deportation. The requested relief did not match the underlying injury.

Faced with the jurisdiction-stripping provisions of the INA, Petitioner's Motion for Reconsideration recasts the requested relief as "[r]elease under the existing OSUP."[34] Recognizing that the proceeding is at the preliminary injunction stage, Petitioner argues that this remedy would "restore the status quo," presumably—given the nature and purpose of a preliminary injunction—to allow the Court to

---

[32] [Doc. No. 14].
[33] [Id. at p. 7].
[34] [Doc. 15-1, p. 5].

address the underlying habeas petition.[35] However, the problem is clear: upon release, the Court loses its authority to address the habeas petition.

It is worth further noting that elsewhere Petitioner's requested relief for the alleged revocation violations has not materially changed. For example, in contending for a stay of removal, Petitioner explains that the "record contains a material, unresolved conflict" and summarizes her allegations of improper revocation.[36] To the extent that Petitioner seeks to stay removal proceedings due to alleged noncompliance with 8 C.F.R. § 241.4(l), the Court reiterates its prior holding that this remedy is not narrowly tailored to the injury asserted.

Moreover, Petitioner's assertion that Respondents' purported violation of 8 C.F.R. § 241.4(l) must be remedied by release is properly considered in the habeas petition. The attempt to make the Court address this issue at the preliminary injunction stage is, in effect, another attempt to expedite the habeas petition process, albeit through an improper procedural vehicle.

The Court once more rejects the request for an expedited adjudication of custody claims. That said, as the Court awaits further briefing on the habeas claim, it anticipates clarification regarding the different dates on Petitioner's notice of revocation of her OSUP and whether the planned informal interview occurred on September 18 or, if it did not occur, whether that violation was cured.[37]

## III. Conclusion

---

[35] [Id.].
[36] [Doc. No. 16-1, p. 1].
[37] [Doc. No. 11-3, p. 1–2].

For the reasons set forth herein,

**IT IS ORDERED** that Petitioner Jecenta Emetazi's Emergency Motion for Temporary Restraining Order [Doc. No. 16] is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner Jecenta Emetazi's Motion for Stay of Removal [Doc. No. 16] is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner Jecenta Emetazi's Motion for Limited Reconsideration [Doc. No. 16] is **DENIED.**

MONROE, LOUISIANA, this 22nd day of October, 2026.

Terry A. Doughty
United States District Judge